We'll hear the next case on the calendar, Montero v. The City of Yonkers and Olsen. Thank you. Next. Good morning, Your Honors. Christopher Watkins on behalf of the appellant Ray Montero. In Garcetti, the Supreme Court made a binary formula with respect to whether speech is employee speech or citizen speech. And if an employee is speaking pursuant to their job duties under Garcetti, then it's citizen speech. I'm sorry, employee speech. If the employee is not speaking pursuant to their job duties, then it's citizen speech. And we move on to the next question, which is whether that speech involved a matter of public concern. Here, Mr. Montero was undisputably speaking out as a union officer and candidate for union office. The district court seems to me focused on your client's speech criticizing the commissioner's management at the PBA meetings. What is the other speech or activity, in your view, that would be protected by the First Amendment? Well, the speech that he made over the period of two years while he was vice president and then running for president in 2012 included criticisms of management and manpower cuts. But also the relationship of the union leadership, namely the president, Mr. Olsen, with management. And his view that that relationship was overly cozy, or that essentially the union was not oppositional enough to management. I believe under Cluvey-Johnson that that activity, particularly since it does include criticisms of management, is protected. In other words, the discussion about the cuts to services and how management was proceeding. Yes, Your Honor. Which your view would be that those kinds of comments are not related to his specific duties as an officer, but to the way that the department was operating and being led. Absolutely. And he was doing it in his capacity as a union officer and candidate for union office. What do you do with our sometimes confusing, to me, notion of a civilian analog? How do you treat it or explain to me what it means? Sure, if it were up to me, I would probably get rid of it as a test or part of the test under Garcetti because I don't think Garcetti requires that it does mention the notion of civilian analog and this court picked that up in Weintraub and has applied it. But not as a dispositive factor, but rather to look at whether or not the underlying speech is truly part of the employee's job duties or this speech is not pursuant to that. Let me ask it a slightly different way, and that is, if this is a union meeting and not, it's a union meeting, why isn't it itself civilian? I'm sorry, your honor? If it's a union, why isn't a union meeting a civilian meeting? I believe it is. It's not, the union members are not meeting at an employee meeting, they're meeting at a union meeting. I believe it is, and to the point of civilian analog, as I raised in my papers, our papers, I believe this court has recognized that union activity is directly analogous to political activity. It includes the same type of activity as political activity. So if the court feels constrained to apply the civilian analog test, which the district court obviously put great weight on, below. Do you think that we are required by our precedent to do so in this case? I do not, your honor. Well, first of all, Garcetti does not say that that's the test. In that case, you may be saying that we're just wrong in how we read Garcetti, but that doesn't necessarily leave us free to ignore. Well, this court has said, in Weintraub and Sens, that that question is not dispositive. So take Matthews, just to follow up on Judge Sacks' point, in specific. We have a case, Matthews. How would you say, in light of Matthews, we should deal with the citizen analog component? In Matthews, the officer complained about the arrest quotas and raised that concern to supervisors that officers were subject to arrest quotas. And this court found the civilian analog being that, that was on summary judgment, that the supervisors were open to citizen complaints and that citizens had the same, essentially same or similar access as the subordinate officer. Here, citizens certainly have the ability to speak out in town hall meetings, to directly speak to the department concerning manpower cuts, concerning departmental-wide policies. But would you, if you were writing the opinion of the court and you get to the question of civilian-citizen analog, before you even get to the specifics of the comparison or the distinction as you see it between the facts of Matthews and the facts of this case, you would have to describe how we think about that civilian-citizen analog. And if you could just elaborate on, you say you think of it as a factor, not a dispositive factor. Say more about that. A method of determining where there's a close question. Certainly in Matthews, there's a close question about whether the officer, as an officer, is speaking pursuant to his duties. It's not that dissimilar from Weintraub case in that. But here, there's really no question, in my view anyway, that Montero is speaking as a union officer and candidate for union office, which by its definition can't be employee speech. Did you just suggest that a town hall would be a civilian analog? I did. I don't think the court needs to, in this type of case, address where somebody is speaking, for instance, on a committee that they're represent, well, I'm trying to think of another, anyway, stick to the facts. Where a union officer is speaking out as a union officer, I don't believe the court needs to question. No, no, I understand that. Yeah. Sticking to this case. Yes. Perhaps we don't agree with you. Perhaps we think there must be a civilian analog. What is it? Is it this town hall? Is it letters to the editor? Any form of political activity, I would say, is analogous under Rowland, this court's decision in Rowland, which found that union association could not be the basis for public employment, absent some compelling reason, and premise that decision specifically on the close relationship between union activity and political activity. So any form of political activity, and yes, a town hall would be such a form. They have them. If they have them in Yonkers, I imagine they do at times. But, I mean, that is, well, that's what I would say about civilian analog. And the court, I would say, the district court overemphasized the question of civilian analog when it did not need to. And in fact, acknowledged that it was not dispositive, but I would argue did make that question dispositive. And Matthews is a bit of an odd duck, right? I mean, it's sort of like, because the officers on the receiving end were there to hear complaints from the public, and he went to those guys, those officers, that sort of created the civilian analog, as opposed to what it was that he was talking about, or not maybe as opposed, but in conjunction with what it was he was talking about. Yes, that's my understanding of the court's decision in Matthews. But the civilian analog there, too, if you look at the decision, is essentially an add-on to say, well, this confirms that Matthews is speaking as a citizen as opposed to an employee. Because I think in Matthews, the question is much closer as to whether he's speaking as an employee when given the facts. Well, let's say that your client leads the union, let's say, hypothetically, it leads the union in negotiations, management negotiations. And then he writes articles, maybe distributes pamphlets. None of those activities would seem to have a civilian-citizen analog, yet they are traditionally what we think of as protected First Amendment union activity. Which part of the articles or the negotiations would not be? The whole thing. Well, I would say articles. Would be. Would be, but I agree. I think the court has recognized that with respect to public union officers that there is protection. And not all, as we acknowledge, not all speech by a public union officer addresses a matter of public concern. But that's not, we don't believe that's an issue in this case. I see that I'm out of time. I have reserved time for rebuttal unless there are other questions at this time. I'll yield to my closing thoughts. Good morning, may it please the court, Ellie Scheibel for the city of Yonkers, Sergeant Moran and Deputy Chief Mueller. I'd like to start, I want to address two points that Plaintiff raised in his reply brief and also one that he's raised here. May I make a suggestion, slow down a little bit, I'm having a little trouble. Sure, I apologize. First is the existence and significance of a civilian analog and second is the question of qualified immunity here for the individual defendants. With respect to civilian analog, plaintiff argues that it's not particularly important and or there is one here because a citizen could raise the same concern via political activity. I think plaintiff's argument completely misunderstands what the civilian analog factor asks for. It's not just a question of whether a citizen could speak on the same issue. This court has said in Matthews and in Jackler that speech has a relevant civilian analog if it is made through channels available to citizens generally. And the court has then looked at the forum, the audience, and the citizen access to that channel. So for example, did the commissioner ever appear for the public in town halls and answer questions? And were there opportunities for citizens to publicly address concerns about his leadership in town hall settings? The plaintiff hasn't alleged anything regarding whether or not there are town halls here. I mean, it is the city of Yonkers and I think there are town hall meetings, but that's not. The plaintiff hasn't alleged that he was denied public access. What has been alleged and what was conceded at the hearing on the notion to dismiss here is that public citizens cannot get anywhere near the union meeting. They're not allowed in to listen to what's said, and they're certainly not allowed in to speak, because you are only a member of the Yonkers police union if you are a Yonkers police officer. Maybe, you're not required to be, is that right? I believe you are required to be in the union, to be in the Yonkers police department. So if we look at the- Why isn't a union meeting its own civilian counterpart? Why isn't it civilian? It's a union. They're not complaining to the boss, theoretically. I mean, they're complaining to co-union members. That's why they're there. How can complaining to co-union members be something you're doing as part of your official job for the city of Yonkers? Well, I think it satisfies both of the Matthews factors. It's both, it's not speech outside of his employment responsibilities, and a citizen who wanted to raise concern. If a citizen had similar concerns about the staffing at the police department, the citizen is not going to go to the union meeting to raise those concerns. Is the union meeting itself not civilian, is my question. No, I think that under Weintraub, the fact that it is something set up solely for employees and solely related to the employment and in a relationship with the employer, then that is not its own civilian analog. A civilian analog would be, his speech would be protected if he did go to a town hall meeting, if he did write a letter to the editor, if there was a- What he said in the course of the meeting was pursuant to his duties as a police officer. I think that under this court's, under the factors that there is not a bright line test and that we're talking about under Ross, does it arise from the relationship between the employer and the employee and his duties. And as this court said in Lynch, that often times, this is just going to be internal complaints about work. Those types of things arise from your employment. But we haven't confronted in our jurisprudence this particular issue, right? With respect to union, standing up in a union meeting and talking about the problems with management, which is what we've got here, right? I don't think it's been addressed directly. I think it does fall directly under Weintraub and also under Matthews. And I don't think- Because those mechanisms are set up solely for employees. You have to be an employee in order to be able to be there to make the statement. Yes, and I think that's key. I mean, I think, I don't think that plaintiff has pointed us to any cases where this court has found that someone was speaking as a citizen when there was not a civilian analog to the speech. And in Matthews, the court said that the speech was protected because he raised the concern in the same manner that a citizen would raise that concern. Here, a citizen is not going to go to a union meeting in order to raise their concern about their local police department. They're going to go to their local officials. They're going to go to their town representatives, the mayor, the commissioner. That's how they're going to raise it. I understand Mr. Watkins' argument, and maybe some of the questions that we're throwing at you for the bench. I think we're having trouble. He's certainly advocating that if it's a union meeting, then it, of necessity, is a citizen's meeting. And your point is not under our case. He only has access to that union meeting, and that union only exists by virtue of being employed as a Yonkers police officer. The Supreme Court uses the term statements outside the course of performing their official duties. Now, this is within the course of performing their official duties, you say? Yes, they've said that there's not a bright line test for that, and that it's a practical inquiry. I think that when someone wants to negotiate and talk about the terms and conditions of their employment, that's pursuant to their employment duties. If you- What about the statements about concern about the management, not of his own particular duties, but of the management generally, and how the cuts affected, and allegedly endangered public safety? Right. I think that that's still, in terms of his criticism of management, that that's still internal office politics. I think it's very similar to the statements made at issue in Connick, where the ADA tried to survey her co-workers about whether they had confidence in management and whether they needed an internal grievance procedure. And the Supreme Court, while speaking on the question of public concern, said, this is just a personal employment grievance. Even though she's asking about broadly, do all the employees in the office feel this way, this is internal office politics, and it's not protected. I think- Wouldn't we be an outlier if we were to hold, as you do, as you're suggesting that we do, if you, all these other circuits, right, have said that when somebody speaks as a union member, is speaking as a private citizen? I think in most of those cases, there is also a civilian analog, as we point out in our brief. I don't think this would be, I think this would, to hold that there must be a civilian analog, I think is more in line with the Supreme Court's cases in Garcetti and Lane. And I think we have to remember that in addition to defining- Garcetti, I don't mean to interrupt, but does Garcetti say that there's a conjunctive test where you have to use that citizen analog, that it's weighted equally? Or can it be read simply as a factor? I think it is a fact. I don't think this court has to decide that it is always a dispositive factor. I do think it's a dispositive factor here. And the whole point is that you're speaking your capacity as a private citizen. If you're not, the court has said we don't, the First Amendment doesn't constitutionalize the employee grievance. Which is basically what the plaintiff is trying to do here. And I think that that principle informed Garcetti. I think it informs how you look at whether they're speaking as a citizen or an employee. And therefore, we look, Garcetti said, we look at employment duties because we need to find that there's a civilian analog in order to protect the speech. I see that I'm out of time, I won't go into it. There are alternative bases for affirmance here, which I believe are totally appropriate and could be made on the complaint. Particularly on qualified immunity and the lack of clearly established law. I don't know if the court wants me to get into that, given that my time is up. If there's anything beyond what you say in your briefs, we'll rely on your briefs. Can I just ask, two sentences, however long, on qualified immunity? I would be interested. Sure. The plaintiff had said in the reply that qualified immunity would depend on disputed issues of fact, and therefore wasn't appropriate for a motion to dismiss. That's not the case. Our argument is that there was no clearly established law. If you look at footnote 13 of the Lynch decision in 2016, which dealt with some very similar union related speech. The court explicitly states that it's not clear, as of the time period relevant here, whether that would fall under employee speech or citizen speech under Garcetti, and I think that decides the issue. Because that in and of itself acknowledges that it's not clear. Exactly. Doesn't the city of Yonkers charter indicate that the police commissioner has supervision and control of all affairs within the Yonkers Police Department, including disciplinary decisions and daily administration? I don't have the charter in front of me, your honor. If you say that's what it says, then I accept your representation. How can you not have the charter before you have it? So was he involved in decisions about the transfer of officers between units? We know. The question of was he involved, it's not alleged here. The only reference to the commissioner is that one of the defendants allegedly made reference to him when, and instructed the plaintiff to stop making these criticizing comments. The commissioner was originally a defendant in the original complaint and was dropped in the amended complaint. And I don't believe there are any other allegations regarding the commissioner in the complaint. Thank you. Good morning, your honors. My name is Andrew Quinmay. Please, the court, I represent Union President Keith Olsen in this matter, and the court referred to the term outlier. And I expect you would have thought that I were sitting next to Mr. Watkins rather than sitting on the side of the city of Yonkers in a case like this. However, the manner in which this case was pled is why I'm sitting at the defense table. By the way, just to clarify a couple of issues, your honor. The confidentiality of Yonkers PBA meetings is absolute. There is no one allowed inside the meeting other than Yonkers PBA members. And your honor, not that I've read this Yonker City Charter recently, but I have read it. And yes, the police commissioner does have full and absolute authority in terms of hiring, firing, promotion, and discipline. Notably, the police commissioner is not a defendant in this case. But Keith Olsen is, which is a highly unusual, and again, use the term outlier. It's highly unusual that a union president would be accused of infringing somebody else's right to free speech. And more importantly, having the ability to take adverse action against that individual, which clearly Keith Olsen does not as president of the PBA. And that's why we focused in our brief on that issue, which is that he does not have the ability to have any adverse action or take any adverse action against Ray Monteiro. In effect, you're saying there isn't enough state action to get into the First Amendment question in the first. Correct, Judge. And if you look at the initial claim, every First Amendment claim, as we all know, requires speech protected by the First Amendment. And that a defendant took adverse action, and then there has to be a causal connection. Well, in this case, when we pointed out in our brief that Keith Olsen could not possibly take adverse action, plaintiff replied, and the reply really pointed out several things. It pointed out three investigations that were actually conducted by, at least as pled, in the complaint, Muller and Moran, who were supervisors within the department. And even they have limited, if not any, authority to take any adverse action, because as the court pointed out, that would be up to the police commissioner to be in charge of transfer, demotion, promotion, or assignments. That is not something that falls to the level of lieutenant or sergeant, as pled in the complaint. But certainly, Keith Olsen does not. And then plaintiff cites a litany of other actions. Monteiro received a text, an investigation was launched into a friend of Monteiro, and those are not adverse actions on their face. They are at best, at best, workplace harassment, minor issues of workplace harassment. So even if the court, and I don't anticipate that the court would rule against the city, but even if it does, I would suggest that Olsen should be dismissed from this case because plaintiff can't meet his burden. And as this court knows, it has the authority to review the complaint de novo and take a look at whether or not plaintiff could plausibly claim adverse action against Keith Olsen. And in this, at least looking at the four corners of his complaint, his not. You, and if I'm wrong, please correct me. I understand you at various points to talk about the motivation. Correct. The plaintiff, his personal ambition. Yeah. But haven't we said that motive is not a dispositive factor? As pointed out by Judge Harrison, my oral argument, and at the district court level as well, yes. But you have to look at the way the plaintiff leads his claim. Actually, the tell is in paragraph 15, where he starts to talk about what he claims to be protected speech. And his initial statement is, word for word, from January 10th, rather from January 2010 to January 2012, as Yonkers PBA Vice President, plaintiff criticized Olsen's leadership of the Yonkers PBA. There's the give. This was never about protected speech, which is why that was the argument made on the district court level. I'm not going to get into whether or not this was a civilian analog, and whether or not speaking at a union meeting is citizen speech versus non-citizen speech. What I'm going to talk about is whether or not it was a matter of public concern, because it was not. This was an intra-union dispute, where Montero was seeking the presidency of the union. And he was critical of the department only to the extent that it hurt Olsen's credibility as union leader. The concept that Olsen was too cozy with the department, and therefore, as a result of that relationship, he shouldn't be union president, that the cuts were bad. And if you notice, he says it's bad for the department, bad for the members, and bad for the PBA. He's not being critical of the department or the management of the department, because if he were being critical- Was your client alleged to be part of the retaliatory actions taken, just whether it's part of the allegation? I'm sorry, I didn't hear the first part of your question, Judge. I'm sorry. Was your client alleged to have taken, participated in the retaliatory actions that are alleged here? My client cannot participate in the retaliatory actions taken. He's alleged to have. Supported, and remember, we know Iqbal versus Twomley and the necessity for more than barefaced allegations in a complaint. The allegation is, he requested others to either launch an investigation or take retaliatory action. And the odd thing about that is, you were talking about, doesn't the police commissioner have absolute authority? Well, if you read this complaint, you would think Keith Olsen, as PBA president, has absolute authority to run the department, the city of Yonkers Police Department. Just to narrow that a little bit, you're saying that the allegation is that he requested it, but he did not himself do something that was retaliatory. Correct, because he himself cannot do anything retaliatory, because he doesn't have authority, yeah. Does it matter, I mean, we're in a motion to dismiss stage. Why aren't we at the stage where it's sufficient on the basis of these allegations to go forward? It may not result in anything. Because, quite frankly, to save my client the necessity of enduring litigation when the allegations in the complaint don't rise to the level of a constitutional claim. It's just that simple. It's Iqbal versus Twomley. You can't simply say, I'm going to allege that Keith Olsen somehow directed superior officers within the city of Yonkers Police Department to take retaliatory action when he doesn't have the ability to do so himself. And part of the three part test on a First Amendment claim is to credibly allege with some level of evidence, rather than just bare faced assertions and allegations, that a defendant who under any constitutional claim has to be personally involved, was personally involved in the retaliatory action. Keith Olsen could not be. It's legally impossible, because as the court pointed out, he doesn't have the authority to take adverse action. And if you look at the complaint, I'm sorry, Judge, but if you look at the complaint, all he alleges is workplace harassment. That's my point. If we're at the pleading stage, the motion to dismiss stage, the place we start is was it alleged, forget whether it's plausible or not, was it alleged? And if you're saying, which I think is what you said twice, it isn't alleged, that's interesting, but it's different from you're saying, maybe it was alleged, but it's impossible. Those are just two different ways to approach it. Judge, I thought you request, I thought the question was, is it alleged that he requested? Okay, because that's how I thought I heard the question, and if that's the question, well, he could request. Is it only alleged that he requested, but not alleged that he otherwise participated as a police officer in the retaliation? It is alleged that he participated in certain acts that actually do not constitute retaliation. For instance, it's alleged that he personally participated in an investigation into one of his own union members. But that's not retaliation against Montero. It's alleged that he personally sent a message to Montero saying I want to have a conversation. But that's not retaliation. It's alleged that he had a conversation with another employee of the Yonkers Police Department saying, Ray better watch out. But that doesn't constitute retaliation. So my point is, looking at the complaint, the only things that could potentially constitute workplace retaliation. There's no personal involvement of Keith Olsen. The things that he is alleged to be personally involved in don't arise to the level of retaliation. They only arise to the level of workplace harassment. So I am well out of time. Unless the court has any further questions, thank you for your time. Thank you. Your Honor, if you may, I would address the civilian analog that counsel raised initially. And in Matthews, this court, which did look after finding that Matthews had spoken as an employee rather than a citizen, did confirm that by looking at civilian analog and the language that it uses. Is what matters is whether the same or a similar channel exists for the ordinary citizen. So to say that non-police officers can't attend these meetings doesn't address the full question even then. What is the similar, it can't be the same, so what's the similar? Well, I would say if the court wants to look at that, certainly political activity of any sort that criticizes the police department was available to any citizen in Yonkers. I guess the, because I'm looking at it, I guess that in Garcetti, the court specifically referred to writing a letter to a local newspaper as being similar. Yes, it did, and I believe there's another, I don't remember what else example it gave, but I think it- I just didn't read it quickly enough. Yes, it did give that example, that classic citizen speech. Here, as to civilian analog, I think we've covered it enough, but I would want to address qualified immunity if the court sees fit. So Garcetti does not change Cluvee Johnson. Garcetti clearly changed the law with respect to employee speech. Employee speech made pursuant to an employee's job duties. Before that, in this court as well as many others, an employee could be protected even though they were speaking pursuant to their job duties. Garcetti, no question about that, changed the law with respect to that. But here, in my view, no question or very little question, should be very little question that Montero was not speaking pursuant to his job duties as a union official, which is in conflict, or there's probably a better term for that. But I would say the fact that Yonkers Police Department was forbidden by law in interfering with the PBA's activities under New York state law as well as many other state laws. It could not exercise control over the speech of a public union officer. So the whole concern underlying Garcetti and Pickering that we want government employers to be able to operate efficiently. And part of that means, in certain cases, being able to have exercise control over an employee's speech is totally absent here. If the court has any other questions, I'd be happy to- Last sentence, does that have to do with qualified immunity? It does. Thank you, Your Honor. I appreciate that. It does because Clue v Johnson was decided in 1999. Rely and Supreme Court decisions before that had recognized that union activity was protected, is protected under the First Amendment. Clue v Johnson clearly stated that this type of union activity, an intra-union dispute which criticizes management, was protected. The defendant was on notice. Was on notice. Garcetti did not change that. The footnote in Lynch v Ackley, which counsel refers to, I believe it's footnote 13, also doesn't change that. First of all, it's dicta, can't change established law. Secondly, it muses about whether a public officer's speech relating to a public employee, union officers' speech about the terms and conditions of employment might still be protected after Garcetti. I would say it's dicta, but also depending on what the court meant specifically by terms and conditions. If we're talking about what we historically believe that to be, wages, hours of work, that's not what Montero was complaining about here. Thank you, Your Honors. Thank you all for your arguments, good arguments. The court will reserve the